(125 So. 732)

No. 30111.

SEEGER v. SEEGER.

Dec. 2, 1929. Rehearing Denied Jan. 6, 1930.

Borah, Himel & Bloch, of New Orleans, for appellant Manzella.

Dart & Dart, of New Orleans, for appellant Seeger.

Spencer, Gidiere, Phelps & Dunbar, Frank P. Kreiger, and Delvaille H. Theard, all of New Orleans, for appellee.

ROGERS, J. This proceeding constitutes one phase of an apparently interminable litigation among the three daughters of the late Gustave Seeger and the late Mrs. Henrietta Seeger, his wife. The three daughters are Mrs. Doretta Bickmann, Mrs. Marie Manzella, and Mrs. Henrietta Carbajal. Gustave Seeger died intestate in the year 1922. A little over three years thereafter his widow, Mrs. Henrietta Seeger, died testate. The will of Mrs. Seeger was probated and Mrs. Manzella qualified as testamentary executrix. The heirs immediately became involved in litigation over the bequests made by the testatrix to Mrs. Bickmann and Mrs. Manzella, the bequests being attacked by Mrs. Carbajal as being null. These legal proceedings engendered considerable ill-feeling among the parties litigant.

Subsequently, the parties, evidently wearying of the litigation and desiring to obtain their respective shares of the property inherited by them in indivision, entered into two written agreements. These agreements provided for a settlement by compromise of the disputed legacies, and stipulated that Mrs. Manzella would withdraw as testamentary executrix; that the three heirs would be placed in possession of the succession property, which was to be promptly sold at public auction to effect a partition among them. An auctioneer was selected to make the sale, and a notary was designated to make the partition. It was further provided that the notary, in lieu of the legacies, was to pay to the legatees certain agreed amounts "out of the proceeds of the sale of all properties of the estate" and "out of the mass of this estate."

In pursuance of the agreements, all the property of the succession, consisting of real estate, was sold at public auction for a total price of, approximately, $2,500,000. The first piece of real estate sold was a large tract of land fronting on Gentilly Road, and commonly known as the "Gus Seeger Orange Grove." This particular piece of property was adjudicated to Charles A. Tessier, Jr., for the sum of $1,437,690. Thereafter Mrs. Carbajal bid for and was adjudicated four parcels at a total price of $763,000, and Mrs. Manzella bid for and was adjudicated two parcels for a total price of $19,600.

Since the proceeding was one in partition, both Mrs. Carbajal and Mrs. Manzella declined to put up the 10 per cent. deposit called for in the advertisement of sale, claiming the right under the codal articles to settle for their respective purchases in the partition of the proceeds of the sales, by taking less or by having the amount of their purchases charged against them in the adjustment inter sese of the rights of the heirs before the notary selected for the purpose.

While the title to the "Orange Grove" tract was being examined, the three co-owners appeared before the notary designated and executed acts of sale, conveying certain pieces of real estate to various adjudicatees. Two of these acts of sale were signed by Mrs. Bickmann and Mrs. Carbajal, and purported to transfer for cash the two-thirds interest of the vendors in the property described to Mrs. Manzella. Four of the acts of sale were signed by Mrs. Bickmann and Mrs. Manzella, and purported to transfer in three of the instruments for cash and in the other instrument for part cash and part credit, represented by a vendor's lien note for $300,000, the two-thirds interest of the vendors in the property described to Mrs. Carbajal. It appears, however, that no cash was actually paid at the execution of the deeds, and the

vendor's lien note was delivered to the notary, who addressed a letter to Mrs. Bickmann and Mrs. Manzella, setting forth that he held the note for account of the heirs until the final settlement should be had among them, with the understanding that Mrs. Carbajal owed an amount above her interest in the succession, which balance was to be accounted for as soon as the Gentilly tract was transferred to the purchaser. Subsequently the notary surrendered the vendor's lien note to the husband of Mrs. Carbajal, who executed and delivered to him in lieu thereof a counter letter, complete in form, signed by him for account of his wife.

In this situation, as stated by the trial judge, "the parties were met, to their astonishment and dismay, with the refusal of Mr. Tessier to accept title to the 479 acres, which he had purchased, on the ground that the sale was by the acre and the difference in acreage was in excess of that permitted by law."

Mrs. Carbajal, acting on the advice of her husband, who is a lawyer, insisted that there was no force in the objection of Mr. Tessier, and that in a suit for specific performance he could and would be made to take title and pay the purchase price. Mrs. Bickmann and Mrs. Manzella, however, refused to join Mrs. Carbajal in such a suit, and, over her protest, privately sold their two-thirds interest in the tract of land to a corporation designated by Mr. Tessier to take title, and of which he was the president. Mr. Tessier joined in the sale and assigned to the corporation in question the adjudication to him to the extent of the two-thirds interest therein of Mrs. Bickmann and Mrs. Manzella.

Mrs. Carbajal then sued Mr. Tessier to enforce specific performance, and, pending this litigation, Mrs. Bickmann and Mrs. Manzella sued Mrs. Carbajal, upon allegations justifying, if true, the annulment of the sales made by them to Mrs. Carbajal, although the relief they sought was the payment of the purchase price. Mrs. Bickmann and Mrs. Manzella, the plaintiffs in the suit, refused to elect, upon being called upon to do so, which of their inconsistent demands they would stand on, and the court below thereupon maintained an exception of no cause of action and rejected their demands in toto. On appeal, this court annulled the judgment and dismissed the suit as in case of nonsuit. Bickmann v. Carbajal, 166 La. 618, 117 So. 738.

The present suit was filed by Mrs. Bickmann against Mrs. Carbajal and Mrs. Manzella pending the appeal and was held in abeyance until a decision was rendered thereon. After the decree of this court became final, this suit was tried and decided.

The suit is one to enforce specific performance of the partition agreement. Mrs. Manzella, although impleaded as a defendant, joined Mrs. Bickmann, the plaintiff, in her demand against Mrs. Carbajal. By way of defense, Mrs. Carbajal set up that Mrs. Bickmann and Mrs. Manzella had breached the agreement, thus rendering specific performance impossible. Mrs. Carbajal denied, in her answer, that she was claiming ownership of the property, and, at the inception of the trial, filed, apparently as a supplement to her answer, certified copies of two notarial acts in which she had appeared a few days prior thereto and expressly disclaimed such ownership and authorized the cancellation from the conveyance records of the inscription of the purported sales.

The court below annulled, on the ground of simulation, the purported sales made by Mrs. Bickmann and Mrs. Manzella to Mrs. Carbajal, but rejected in all other respects the demands of Mrs. Bickmann. The costs

of the proceedings were assessed against Mrs. Carbajal. Mrs. Bickmann, the plaintiff, and Mrs. Manzella, a nominal defendant, have appealed from the judgment.

The court below found, we think correctly, that the conventional agreement of the parties to partition the property held by them in common, constituting an undivided succession or estate, clearly contemplated that all the property should be sold at the partition sale, and that each coheir purchasing at the sale could and would be permitted to account for the consideration of the sales in the ultimate partition to be effected before the notary mutually selected by the heirs. The agreement is in accord with the rule of partitions, that a co-owner purchasing a portion of the common property is not obliged to pay the purchase price until a partition is had by which it is ascertained what balance there is in his favor or against him. Civ. Code, arts. 1343, 2625.

The court below further found, and we also think correctly, that Mrs. Carbajal, in bidding in property to an aggregate purchase price of $763,000, was guided by the price at which the Orange Grove tract had been previously adjudicated to Mr. Tessier; that if Mr. Tessier had complied with his bid and paid over the purchase price, Mrs. Carbajal would have been required to pay in cash an amount not exceeding $20,000, representing the surplus of the purchase price over the portion of the proceeds coming to her in the partition before the notary.

The court below then reached the conclusion that Mrs. Bickmann and Mrs. Manzella, by selling their two-thirds interest in the tract of land, took that property out of the partition, and rendered the contract of partition impossible of performance, as contemplated by the parties. We agree in this conclusion.

The sale of the Orange Grove tract was one of a series of sales made in furtherance of the mutual agreement of the three Seeger heirs for an amicable partition of the succession property. When the tract of land in question was adjudicated to Mr. Tessier, the heirs were not only bound to the adjudicatee, but they were also bound to each other to confirm the adjudication at the stipulated price.

If Mr. Tessier was correct in withdrawing from his bid, the sale was void, and it was the duty of the coheirs to return his deposit and direct that the property be readvertised and resold for their joint account, in accordance with the terms of their contract. If, on the contrary, the position assumed by Mr. Tessier was incorrect, it was incumbent upon the coheirs to act jointly in an attempt to enforce the adjudication, Mrs. Carbajal desired to do this, but her sisters, disregarding her wishes and believing that their own interests would be better served thereby, sold out their shares in the tract of land to a corporation designated by Mr. Tessier.

The fact that Mrs. Carbajal was unsuccessful in her attempt to force Tessier to comply with his bid (Carbajal v. Tessier, 163 La. 894, 113 So. 138), and the further fact that Mrs. Carbajal still contends the decision did not annul the adjudication to Mr. Tessier, and is maintaining her contention in the courts, has no bearing on the present issue. Irrespective of the validity or invalidity of the adjudication to Mr. Tessier, the contracting parties were mutually bound by their contract. Neither could withdraw therefrom without the consent of the others. If the coheirs of Mrs. Carbajal were not willing to join her in the suit against Mr. Tessier, they should, at least, have remained quiescent, awaiting its result, if they intended to carry out the partition as originally agreed up-

on. But they did not choose to do either, preferring to sell out privately for a lesser amount to the corporation designated by the adjudicatee.

As a result of their action Mrs. Bickmann and Mrs. Manzella have received in cash for their interest in the Orange Grove tract an amount in excess of $900,000, and, in addition to providing her with a strange corporation as a co-owner in the property, have left Mrs. Carbajal with a lawsuit on her hands against Mr. Tessier.

The active mass to be partitioned under the agreement of the heirs was to be composed of the proceeds to be realized from the sale of all the real estate held in common by them. As a result of the auction sale, the active mass should have amounted, in round figures, to $2,500,000. This was the mass or fund out of which Mrs. Carbajal expected to pay, as she had a right to do, for the purchases made by her. By selling at private sale to a third person against the wishes of Mrs. Carbajal, her sisters, Mrs. Bickmann and Mrs. Manzella, have destroyed the active mass or fund which was to be partitioned. There is no longer any property owned in common by the three sisters, as it was at the time they entered into their agreement of partition, and at the time the property was advertised and sold at public auction. The principal piece of property has been withdrawn from the common ownership by the sale by Mrs. Bickmann and Mrs. Manzella of their respective interests therein.

■■ Since Mrs. Bickmann and Mrs. Manzella have not only omitted to perform the acts they agreed to perform, but also have by their own acts rendered the agreement for a partition of the whole succession property as originally intended by the parties impossible of performance, plaintiff cannot be granted the relief sought for in the present suit. A party seeking to compel the specific performance of a contract must himself show a specific compliance with his own obligation. A contracting party, who is himself in default, cannot put the other contracting party in default. Pratt v. McCoy, 128 La. 570, 54 So. 1012.

■ At the time the acts of sale to Mrs. Carbajal and Mrs. Manzella were executed, it was evidently expected by all the interested parties that the sale to Mr. Tessier would be completed shortly thereafter, so that with the proceeds of that sale in his possession the notary would be in a position to carry out the agreement and intention of the parties to partition the whole estate. No consideration for the sales, admittedly, passed between the parties. Mrs. Carbajal has expressly and formally disclaimed title to the property placed in her name, and has authorized the cancellation of the inscription of the sales on the conveyance records. In these circumstances, the judge of the district court properly ruled that the sales were mere simulations, and his judgment of annulment, based thereon, is undeniably correct.

For the reasons assigned, the judgment appealed from is affirmed; appellants to pay the costs of appeal.

O'NIELL, C. J., concurs in the result.