173 So. 174

UNITED GAS PUBLIC SERVICE CO. v. CHRISTIAN et al.

No. 34185.

March 1, 1937.

W. B. Massey, of Shreveport, for appellant.

Foster, Hall, Barret & Smith, of Shreveport, for appellee.

FOURNET, Justice.

The United Gas Public Service Company, being the owner of the natural gas rights under a certain oil and gas lease affecting property in Caddo parish and having completed a gas well thereon on December 8, 1934, impleaded Ned Christian, who had been decreed to be the owner of a ¼ of ⅙ interest in the property (see Succession of Coleman Wells, 184 La. 523, 166 So. 488), and Coleman Christian, George Christian, and Ludella Larry and the law firm of Foster, Hall, Barret & Smith, composed of Pike Hall, H. B. Barret, and M. K. Smith, because of a contract involving said interest, executed by Ned Christian and the said law firm to determine the respective rights of the parties to the contract or who is entitled to the royalties which have accrued from that interest up to May 1, 1936, amounting to $469.26, and also the royalties thereafter to accrue.

Ned Christian answered, admitting that he signed the contract, but averred that it was signed by him in error as to the facts in the case; and, in the alternative, he pleaded, as to Coleman Christian, George Christian, and Ludella Larry, that the decree of this court in the Succession of Coleman Wells, supra, was res adjudicata as to them, and as to the law firm of Foster, Hall, Barret & Smith, that they are estopped from claiming any interest under the contract because of their neglect of professional and contractual duties, and for the further reason that no consideration was paid for the interest in the contract.

The law firm of Foster, Hall, Barret & Smith filed separate answers in their own behalf and likewise on behalf of Coleman Christian, George Christian, and Ludella Larry, seeking to have their respective interests in the contract recognized in accordance with its terms.

The trial judge rendered judgment maintaining the plea of res adjudicata as to Coleman Christian, George Christian, and Ludella Larry, and on the trial of the merits, rendered judgment recognizing Pike Hall, H. P. Barret, and Marion K. Smith as owners of an undivided ⅟₄₈ interest in the property and, as such, entitled to a like interest in the ⅛ of the minerals produced therefrom and a ½ interest in all amounts accrued to the credit of the interest in controversy; ½ of the costs were assessed against Ned Christian and the other half against Coleman Christian, George Christian, and Ludella Larry.

Ned Christian alone appealed from the judgment of the lower court, and therefore the sole question for our consideration is whether or not Foster, Hall, Barret & Smith are entitled to recover under the contract executed on September 22, 1934, the pertinent part of which reads as follows:

"In consideration of the services rendered and to be rendered and the obligations hereinabove assumed, by parties of the second part (the attorneys), parties of the first part hereby contract and agree to assign and transfer to parties of the second part an undivided one-half interest in the subject-matter of their claims herein or any suits brought by parties of the second part, or any rights or interests that may be acquired by the defense of any suits for and in behalf of parties of the first part, and in order to effectuate said agreement, parties of the first part do by these presents assign, transfer and deliver

unto parties of the second part, an undivided one-half interest in any judgment that may be obtained in their behalf by parties of the second part, together with an undivided half interest in any properties recovered by said judgments, either as plaintiffs or defendants, and particularly an undivided one-half interest in the property hereinabove described (less the one-half interest reserved to Ned Christian, his vendees and assignees)." (Brackets ours.)

Ned Christian, joined by Evelyn Caldwell and Laura Bell Gilliam McCoy, executed a mineral lease affecting 145 acres of land situated in what is known as the Rodessa oil field in Caddo parish, La., in favor of R. W. Norton, on October 14, 1929, and on April 4, 1934, this lease was approved and ratified by Alonzo Gilliam. The gas rights under the lease were transferred to the United Gas Public Service Company.

At the time the above described property was patented to Ned Christian as a homestead, he was married to Harriet Watson, who subsequently died intestate, leaving surviving her three children, issue of the union, viz., Sallie, Julia, and Eliza, who also died intestate since the death of their mother. Julia was survived by two legitimate children, Laura Bell Gilliam McCoy and Alonzo Gilliam, and Eliza by one legitimate child, Evelyn Caldwell, while Sallie left surviving her an illegitimate child, Coleman Wells, who died unmarried and left no legal relations, and without having taken any action with reference to his mother's succession.

It also appears that Ned Christian had three children prior to his marriage to Harriet Watson, issue of his union with Caroline Tyson Christian, deceased, viz., Ludella Christian Larry, Coleman Christian, and George Christian. They, together with Ned Christian, entered into the contract in controversy here with the law firm of Foster, Hall, Barret & Smith.

Before any legal action had been taken by the law firm under their contract, Ned Christian, without any notice to or attempt to discharge Foster, Hall, Barret & Smith, joined by the grandchildren of his marriage with Harriet Watson, intervened in the proceedings of the Succession of Coleman Wells, supra, and were represented by other counsel. Foster, Hall, Barret & Smith, however, appeared in the lower court and in this court as amicus curiæ for Ned Christian and filed briefs in both courts, "dedicated to the proper presentation of the claim of Ned Christian." A member of the law firm also appeared before this court and argued the case as amicus curiæ.

The contention that Ned Christian signed the contract in error as to the real facts of the case is not supported by the evidence and, consequently, is without merit.

It is the universally recognized right of a client to revoke the employment of his attorney at will, with or without cause. Ruling Case Law, Vol. 2, § 29, page 957. But there is an exception to this rule if the attorney, in the contract of employment, acquired an interest in the property, as the contract then has the status of a mandate coupled with an interest. Louque v. Dejan, 129 La. 519, 56 So. 427, 38 L.R.A.(N.S.) 389. See, also, McClung et al. v. Atlas Oil Co. et al., 148 La. 674, 87 So. 515.

Act No. 124 of 1906 provides "that, by written contract signed by the client, attorneys-at-law may acquire as their fee * * * an interest in the subject matter of the suit, proposed suit or claim, in the prosecution or defense of which they are employed, whether such suit or claim be for money or for property, real, personal or of any description whatever."

This court, in the case of Andirac v. Richardson, 125 La. 883, 51 So. 1024, held that "the amount of the contingent fee, being fixed by contract, is binding on the client, in the absence of fraud practiced, or error induced, by the attorney."

In the case of D'Avricourt v. Seeger et al., 169 La. 620, 125 So. 735, 737, it was held that where the failure of an attorney to comply with his contract for professional services in effecting a sale of succession property was caused by the action of certain heirs in selling their interest, such heirs were nevertheless liable under the contract. The court, in disposing of that issue, said:

"It is expressly provided in article 2040 of the Civil Code that: 'The condition is considered as fulfilled, when the fulfillment of it has been prevented by the party bound to perform it.'

"The contract of sale of the two-thirds interest of Mrs. Bickmann and Mrs. Manzella to the Gentilly Development Company was clearly an act, on their part, of entering into another contract destructive of their first contract with plaintiff. A party cannot get out of his contract in that manner. *No one can be permitted to take advantage of his own wrong.* Lloyd v. Dickson et al., 116 La. 90, 92, 40 So. 542.

"The plaintiff is therefore entitled to recover on the contract against the defendants Mrs. Bickmann and Mrs. Manzella." (Italics ours.)

In the case of Lloyd v. Dickson, supra, it was held that:

"The parties having agreed to join their efforts for controlling a company and for having plaintiff chosen as secretary and local manager, and defendants having thereafter entered into a contract with another party, by which the same positions were to be secured for such other party, held, plaintiff has a cause of action for breach of contract." (Syllabus by the court.)

In that case it was urged that the petition did not show a cause of action for the reason "that the obligation of defendant is alleged to have been to 'use their influence and support in favor of plaintiff, if control of the company was secured'; that is to say, the obligation was conditional upon the control of the company being secured; and that it is not alleged that control was secured. It is not alleged that the condition was fulfilled; that it is the case of an obligation under suspensive condition, and the condition never fulfilled." And in disposing of the question raised, the court said:

"The answer to this is twofold: First, that the obligation of defendant was not to control the company, or to secure the position for plaintiff; but only to endeavor to do both. Perhaps it would be a defense to show that such endeavor would not have succeeded, and that, therefore, plaintiff has not been damaged; but the conclusion from the face of the petition is that it would

have succeeded. Second, *'the condition is considered as fulfilled, when the fulfillment of it has been prevented by the party bound to perform it.'* · Civ.Code art. 2040. *If instead of standing loyally by their contract with plaintiff the defendants enter into a contract destructive of it, the condition, as a matter of course, can never be fulfilled; but it is perfectly plain that a party cannot get out of his' contract in that manner."* (Italics ours.)

We are therefore of the opinion that Ned Christian, by employing other counsel to represent him in this case, prevented the full performance of his prior contract with the firm of Foster, Hall, Barret & Smith, and he is, therefore, liable under his contract with them. Article 2040, Rev.Civ.Code; D'Avricourt v. Seeger, supra; Lloyd v. Dickson, supra.

For the reasons assigned, the judgment of the lower court is affirmed.

O'NIELL, C. J., absent.